**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| Jeanne Suchodolski, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>Carlos Del Toro, Secretary, Department of the Navy, DOES 1-50, inclusive and ROE CORPORATIONS 1-50, inclusive,<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT AND JURY DEMAND** |

The Plaintiff Jeanne Suchodolski ("Suchodolski") by and through her attorneys of record, the law firm of HKM Employment Attorneys LLP hereby complains and alleges as follows:

## JURISDICTION

1. This is an action for damages arising under Title VII of the Civil Rights Act of 1964 ("Title VII") (Sex Discrimination) 42 U.S.C. §2000e to 2000e-17, and for unlawful retaliation under the above statutes, among other causes of action as outlined herein.

2. This Court has primary jurisdiction over claims set forth herein pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a) (4) (civil rights action) and 42 U.S.C. §2000e-5(f) (3) (unlawful discrimination and retaliation in employment). Additionally, this Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. §1367.

3. Upon information and belief, all material allegations relative to the named defendants contained in this Complaint occurred in Kitsap and King County, Washington. Therefore, venue properly lies in the Western District of the United States Court for the District of Washington pursuant to 28 U.S.C. §1391(b)(2).

4. At all relevant times, Defendants were engaged in interstate commerce as an entity of the Federal Government, and each employed 20 or more employees for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year and are therefore subject to the provisions of the statutes outlined herein.

**EXHAUSTION OF ADMINISTRATIVE REMEDY**

5. On or about October 29, 2020 Plaintiff requested Equal Employment Opportunity (EEO) counseling.

6. Plaintiff filed her formal EEO Complaint on February 9, 2021.

7. Thereafter, the EEO issued its Final Agency Decision on behalf of the Department of the Navy on or about October 17, 2022.

8. Less than 90 days have passed since the date of mailing of the "Final Agency Decision." This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

9. Prior to filing this action, Plaintiff exhausted the administrative remedy on all claims pled hereunder.

**PARTIES**

10. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

11. Plaintiff is a citizen of the State of Washington and a resident of King County, Washington.

12. At all relevant times, Defendant Carlos Del Toro, Secretary, Department of the United States Navy ("Navy" or "Agency") was a governmental agency with operations worldwide and relevant herein, in Keyport, Washington, where Plaintiff was employed.

13. Doe Defendants 1 through 50 inclusive and Roe Corporation/Agency Defendants 1 through 50 inclusive, are unknown at the present time and thus sued by Plaintiff in such fictitious names. Plaintiff alleges however that said Defendants are in some manner responsible for the damages sustained by Plaintiff and that said Defendants will be named with peculiarity once their identities are known. At such time, Plaintiff will seek leave of court to state more fully herein the names and acts of said Defendants.

**GENERAL ALLEGATIONS**

14. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

15. At all relevant times herein, Plaintiff worked as an Administrative/Technical Specialist, NT-1222-06, at the Naval Warfare Center (NUWC) in Keyport Washington.

16. Plaintiff is female.

17. Other than Plaintiff, all individuals are identified by either initials or titles as used in the EEOC investigatory process to protect the privacy of those individuals. True names and capacities of the individuals identified herein will be provided upon request in a confidential manner.

18. Beginning April 2019, Plaintiff was subjected to undue criticism of her conduct and work performance; had the scope of her duties reduced and has endured sabotage of her work assignments and activities.

19. Further, since April 2019 the Agency fostered an environment of humiliation and

disrespect targeted toward Plaintiff.

20. Plaintiff's first level supervisor (Responsible Management Official [RMO] 1) harassed her.

21. Plaintiff informed her two second-level supervisors (RMO2 and RMO3) as early as February 2020.

22. Plaintiff was further harassed by the head of the Naval Undersea Warfare Center Keyport and others including but not limited to M. B. who upon information and belief called Plaintiff a "cunt"

23. Plaintiff's chain of command refused to address the hostile work environment.

24. A variety of issues arose in this context which included, but are in no way limited to the following examples:

   a. Plaintiff was called a "cunt" by M.B.

   b. RMO 1 called Plaintiff "crazy" for certain ideas, which turned out to be things that were already being done

   c. RMO 1 referred to Plaintiff as "difficult" for raising issues and defending herself.

   d. RMO 1 used gender-based tropes while indicating that Plaintiff plays hockey so she can move furniture in lieu of calling facilities maintenance to move furniture

   e. RMO 1 claimed that Plaintiff's US Coast Guard service isn't "real" government service.

   f. RMO 1 claimed Plaintiff was "ungrateful" when she requested to have a say in how her work is organized.

    g. Plaintiff was handed a stack of paper towels from the men's room and told to clean her office by a male employee on her first day at work

    h. Dr. I. asked her to schedule a meeting rather than refer that task to his assistant

    i. Dr. I. cited her male colleague as coauthor on the IW paper. The male colleague is the third author and Dr. I. omitted the second author, also a female.

    j. Dr I. did not deny dismissing Plaintiff in front of male colleagues or making disparaging statements about another female leader during the EEO process

    k. A variety of statements and actions that illustrate a belief that men are more entitled to resources than Plaintiff, or females in general.

    l. Generally, Plaintiff must physically appear with male colleagues in tow to be heard by the recipient

    m. Plaintiff is the only employee who didn't get picked up at orientation (this is a form of grooming by the harasser RMO1).

25. Use of coercion and intimidation

    a. RMO 1 threatened S.H., Plaintiff's coauthor, with her job if she (S.H.) did not behave the way RMO 1 requested

    b. The Ethics guidance which threatens incarceration

    c. To get reimbursed for expenses, RMO1 requested Captain M. sign a document Plaintiff was not allowed to see. Notably, accepting reimbursement on these terms likely would have been an admission of wrongdoing.

    d. RMO1 forced Plaintiff to sign a blank performance review to get a bonus she had earned

26. Use of irregular procedures for release of the IW paper even though Plaintiff complied with the correct procedures

27. RMO's 1 and 3 received 3rd party complaints about how Plaintiff was being treated but only found their existence to be "inappropriate" and failed to investigate or act on the complaints

28. RMO1 admits he interfered in Plaintiff being hired for a new position but claimed such was not harmful.

29. As discrimination and retaliation for her protected activities Defendant curtailed Plaintiff's ability to exercise authority commensurate with her responsibilities.

30. Plaintiff's duties were reduced when

    a. she was told that the Innovation Warfare project was not part of her work.

    b. when her July 10, 2019, Liaison letter was canceled; and

    c. she was given a "gag order" by RMO1 instructing her she was not to speak to Keyport Leaders, other Office of General Counsel lawyers and other Navy coworkers not assigned to Keyport, without his approval.

31. RMO1 issued Plaintiff numerous communications stating she could not speak to Agency leaders or coworkers without him being present or without his prior approval.

32. RMO1 restricted and/or hindered Plaintiff's ability to speak with leaders on topics regarding her expertise.

33. RMO1 failed to include her in decisions that impacted her work and when she asked him to include her, he called her "ungrateful."

34. When Plaintiff complained to RMO1 about instances of professional disrespect she experienced, he was dismissive of her concerns.

35. In July 2019, she was directed by K. D. (Plaintiff's then second level supervisor, to proceed with hiring a full-time assistant, but some individuals in management tried to delay or stop this action, including RMO1.

36. When RMO1 was on an extended absence of weeks, Plaintiff worked with the acting counsel for Keyport, M.W, and Ms. D.

37. Plaintiff went over all the options for the assistant and was specifically told **not** to hire temporary help or a contractor for the role.

38. In doing so, Plaintiff was following the guidance RMO 1 provided to Plaintiff before he went on leave to "figure it out"

39. Notably, Plaintiff received no contrary guidance from M.W. who RMO1 left in charge while he was on leave.

40. At the time, there was no TD in charge of Keyport, which is why Plaintiff had to go to Capt. M. for the final local approval.

41. Due to the ongoing interference, Plaintiff was unable to hire an assistant until approximately May, 2020, nearly a year after being directed to do so.

42. Since April 2019, Plaintiff has been provided inaccurate or inconsistent instructions and feedback; and Since April 2019, information and resources have been held from Plaintiff.

43. Information was withheld from Plaintiff which she believed was necessary for the efficient and successful completion of her job duties.

44. RMO1 failed to inform the Comptroller and other colleagues including Capt. M and RMO's 2, 3, 4 and possibly others that he did not provide her with the training or information needed to comply with Keyport local policies.

45. Overall, RMO1 failed to provide proper guidance for Plaintiff as her supervisor.

46. Plaintiff was not provided with a functioning computer in a timely fashion between April–May 2019 and 2020.

47. Further, RMO1 failed to provide Plaintiff with a permanent or OSHA compliant office beginning in June 2019.

48. It was not until another individual intervened in the process that Plaintiff was provided an appropriate office.

49. Other examples of Plaintiff being denied adequate resources to successfully do her job includes various instances of being thwarted in her ability to give reward and recognition to colleagues.

50. Since April 2019, information has been shared with Plaintiff's co-workers, which has undermined her efforts to complete her job duties efficiently and successfully.

51. RMO1 and others in Plaintiff's chain of Command, including, but not limited to the Chief of Staff, B.C, another employee, told Plaintiff's co-workers that she was new to the government and did not know what she was doing or how government matters were carried out.

52. RMO1 gave Plaintiff a list of job duties that specifically stated for her to stop work on the Innovation Warfare project.

53. This list of duties reduced her from performing as a highly advanced, senior level intellectual property professional to a low-level patent prosecution attorney with minimal responsibilities.

54. Since April 2019, Plaintiff's co-workers have been empowered to ignore or dismiss her communications; and Since April 2019, Plaintiff has been set up to have conflicts with other co-workers.

55. On several occasions, Plaintiff's management team encouraged her co-workers to ignore her communications by omitting her from email conversations regarding her section and expenses related to the patent draftsman.

56. Upon information and belief, Plaintiff's supervisor instructed her work colleagues to report to him each time she or another female requested guidance or assistance pertaining to work related matters.

57. Upon information and belief, RMO 1 told people, including the facilities/maintenance personnel they could ignore her.

58. On more than one occasion, RMO 1 failed to provide or rescinded approval for her to provide support to her colleagues.

59. RMO1 failed to inform at least E. L. and the Keyport TD or others that the Innovation Warfare Project was "assigned work."

60. Since April 2019, the Agency has failed or delayed reimbursement for work-related expenses.

61. The Head of Business Operations and the Comptroller instructed Plaintiff to personally pay all postal expenses and submit receipts for reimbursement.

62. Plaintiff was required to resubmit postal receipts for reimbursement for postal expenses on numerous occasions and also submitted paperwork associated with processing reimbursement for her bar dues for 2020, travel expenses incurred during the period

from October 2019 to 2020, along with reimbursement for continuing legal education expenses to include DOD T2 training.

63. In contrast to others, not of her protected classes, Plaintiff was not reimbursed in a timely fashion for either of the aforementioned expenses.

64. Plaintiff was only finally reimbursed in summer/early fall 2020 for some of her travel related expenses. Plaintiff was never reimbursed for the conference fee, despite having been instructed to attend.

65. In February 2020 (otherwise unspecified), Plaintiff's request for supervisory training was denied.

66. In February 2020 Plaintiff contacted HR and asked about attending supervisor training.

67. HR informed Plaintiff that she was not designated as a supervisor (per RMO1) even though she supervised two people.

68. RMO1 told Plaintiff he was not allowed to authorize her to be designated as a supervisor or send her to supervisory training.

69. In contrast, K. B. stated to Plaintiff that it was, in fact, possible to be designated as a supervisor and/or send her to supervisor training.

70. RMO1 refused to consider her as a supervisor or send her to supervisory training.

71. Notably RMO1 designated, a male paralegal A.P., to be a supervisor even though A.P. did not supervise anyone.

72. Since April 2019, Plaintiff has been excluded from senior leadership meetings and communications regarding the scope of her job duties, including budget talks.

73. Plaintiff submitted a three-year long-range budget plan in July 2019 and was excluded from budget planning meetings for fiscal years 2020 and 2021.

74. Further, in contrast to her coworkers, not of her protected classes, Plaintiff had never been invited to attend Keyport senior leadership meetings.

75. Since April 2019, appropriate attribution and recognition for Plaintiff's work performance has not been provided.

76. Plaintiff had sole responsibility of the patent section to include supervising and training the patent executive assistant and the technical writer.

77. Plaintiff received no recognition for these accomplishments.

78. She also was not given credit for the presentation of the Innovation Warfare Project that was forwarded, by other than the authors, to senior leaders in the Agency, and was circulated by other than the authors to senior leaders in the DOD, and to the US China Commission.

79. In contrast, Plaintiff believes that Plaintiff's coworkers, not of her protected class were often recognized for similar work and accomplishments.

80. Since April 2019, the decision-making authority commensurate with Plaintiff's job responsibilities has been denied or restricted.

81. Plaintiff was routinely restricted from making decisions commensurate with her job responsibilities.

82. Examples of this included issues she experienced with the creation of a budget in fiscal year (FY) 2021 and challenges with getting approval for a full-time assistant.

83. Since April 2019, Plaintiff has been falsely accused of conduct that she did not engage in.

84. RMO4 accused Plaintiff of bypassing her management team.

85. RMO4's assertions were not true.

86. Plaintiff politely refuted the allegation but RMO4 continued to repeat the allegation.
87. Plaintiff discussed the matter with RMO2, but nothing was done to confirm Plaintiff's version of the events, nor to correct these incorrect assertions.
88. On August 24, 2020, Plaintiff was issued ethics guidance.
89. The Ethics Guidance Plaintiff received was based on inaccurate assumptions and information that threatened her with possible incarceration.
90. The Ethics Guidance was issued to her after she filed her Administrative Grievance.
91. The Ethics Guidance was done so at the request of RMO2.
92. Plaintiff believes the Ethics Guidance was given to her in retaliation for reporting discriminatory acts within her department.
93. Plaintiff's Liaison Letter was cancelled, and a revision of her work assignments was given to her from RMO1.
94. On September 14, 2020, Plaintiff was issued a list of duties tantamount to a diminution of duties.
95. Plaintiff asserted that prior to September 14, 2020, she never received a formal list of work assignments.
96. The assignments she usually performed were in direct relation with her position and responsibilities in the patent section.
97. However, on September 15, 2020, RMO1 gave her a revised and final version of her job duties.
98. The final revised version of her job duties removed key elements and functions that she previously performed.

99. Further, Plaintiff now had to seek RMO1's approval for all self-initiative projects or self-directed work-related acts.

100. RMO1 did not discuss these changes with her prior to giving her the final revised assignment list.

101. Specifically, the revised assignment list stated:

　　a. Liaison Letter of July 2019 and its attendant projects was formally cancelled.

　　b. The Innovation Warfare project was formally cancelled and no longer considered a work effort.

　　c. Any work on diversity in inventorship under the Success Act is placed on hold and now requires prior approval on a per project basis.

　　d. Filing of Patent Cooperation Treaty (PCT) patent applications, normally something that resides within the province of patent counsel after consultation with the client, and the Office of Naval Research, now additionally requires the approval of RMO1.

　　e. Specifically limited Plaintiff's interactions with Navalx and with specifically named individual leaders of that office.

　　f. Limited Plaintiff's interactions with the Commander.

　　g. Other initiatives and projects which previously were or could have been self-initiated and self-directed now must be requested or approved by RMO1

　　h. the patent reductions cut the patenting goals (and hence any possible subsequent licensing work) to 60% of the previous value.

102. The revised assignment list had no mention of professional networking or other professional activities that maintained Plaintiff's standing in the profession and state of the art knowledge of best practices.

103. The revised assignment list removed any higher value-added intellectual property management and strategy efforts.

104. On September 15, 2020, Plaintiff was issued a Letter of Expectations.

105. In retaliation for Plaintiff filing an Administrative Grievance, Plaintiff received a Letter of Expectations ("LOE") that contained false, incorrect, and misleading information.

106. Furthermore, an investigation into her conduct was never done to substantiate or refute the issuing of the LOE.

107. Prior to receiving the LOE Plaintiff never received any feedback or negative counseling regarding the alleged conduct cited in the LOE.

## FIRST CAUSE OF ACTION

**(Violation of Title VII, 42 U.S.C. §2000e to 2000e-17)**

108. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

109. During the course of her employment at United States Navy, Plaintiff was subject to an unwelcome vicious, extreme, outrageous, pervasive, and unrelenting campaign of sex and gender-based harassment (non-sexual) and sex discrimination when *inter alia*

    a. Since April 2019, Plaintiff has been subjected to undue criticism of her conduct and work performance.

    b. Since April 2019, the scope of Plaintiff's duties has been reduced.

    c. Since April 2019, the Agency has fostered an environment of humiliation and

disrespect.

d. Since April 2019, Plaintiff has been provided inaccurate or inconsistent instructions and feedback.

e. Since April 2019, information has been shared with co-workers, which has undermined Plaintiff's efforts to complete her job duties efficiently and successfully.

f. Since April 2019, Plaintiff's co-workers have been empowered to ignore or dismiss her communications; and Since April 2019, Plaintiff has been set up to have conflicts with other co-workers.

g. Since April 2019, the Agency has failed or delayed reimbursement for work-related expenses; and

h. In February 2020 Plaintiff's request for supervisory training was denied and Plaintiff's supervisor lied to her about the possibility for her to attend the supervisory training.

110. The Agency discriminated against Plaintiff and subjected her to a hostile work environment (non-sexual) based on sex (female) and reprisal as specified, but not limited to the following events, detailed more herein:

a. Since April 2019, actions have been taken that have sabotaged Plaintiff's work assignments and activities.

b. Since April 2019, information and resources have been held from Plaintiff.

c. Since April 2019, Plaintiff has been set up to have conflicts with other co-workers.

d. Since April 2019, Plaintiff has been excluded from senior leadership meetings

and communications regarding the scope of her job duties, including budget talks.

e. Since April 2019, appropriate attribution and recognition for Plaintiff's work performance has not been provided.

f. Since April 2019, the decision-making authority commensurate with Plaintiff's job responsibilities has been denied or restricted.

g. Since April 2019, Plaintiff has been falsely accused of conduct that she did not engage in.

h. On August 24, 2020, Plaintiff was improperly issued ethics guidance based on wrongfully implied assumptions which created a cloud of suspicion over Plaintiff's career and reputation.

i. On September 14, 2020, Plaintiff was issued a list of duties tantamount to a diminution of duties; and

j. On September 15, 2020, Plaintiff was issued a Letter of Expectations which created a false narrative regarding Plaintiff's work and competence.

111. The Defendant's behavior violated 42 U.S.C. § 2000e-2(a) by discriminating against Plaintiff because of her sex (female).

112. Due to its illegal actions, Defendant must pay damages in an amount to be determined at trial for back pay, front pay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

113. Because Defendant is guilty of oppression, fraud, or malice, express or implied, Defendant must pay Plaintiff an additional amount for the sake of example and by way of punishment.

114. Plaintiff has had to obtain the services of an attorney to protect her rights and secure compensation for the damages incurred as a result of these violations of Title VII and therefore, she is entitled to recover reasonable attorney's fees against Defendants pursuant to 42 U.S.C. §2000e-5(k).

## SECOND CAUSE OF ACTION

### (Retaliation under Federal Law, 42 U.S.C. § 2000e-3)

115. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

116. In violation of 42 U.S.C § 200e-3, Defendant retaliated against Plaintiff after she complained of acts which she reasonably believed were discriminatory. By way of *non-exclusive* example Defendant retaliated against Plaintiff by inter alia, issuing improper, unjustified discipline.

117. The non-exclusive list of behavior complained of above also constitutes retaliatory harassment and the creation of an illegally hostile environment.

118. Plaintiff may be unaware of additional detrimental acts constituting retaliation in that it harmed her in the workplace.

119. The actions and conduct by Defendant constitute illegal retaliation, prohibited by federal statutes.

120. Due to its illegal actions, Defendant must pay damages in an amount to be determined at trial for back pay, front pay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

121. Because Defendant is guilty of oppression, fraud, or malice, express or implied, Defendant must pay Plaintiff an additional amount for the sake of example and by way

of punishment.

122. Plaintiff has had to obtain the services of an attorney to protect her rights and secure compensation for the damages incurred when Defendant violated Title VII, and therefore, she is entitled to recover reasonable attorney's fees against Defendant pursuant to Title VII.

**WHEREFORE,** Plaintiff prays this court for:

 a. A jury trial on all appropriate claims.

and to enter judgment in favor of the Plaintiff by:

 b. Awarding Plaintiff an amount sufficient to fully compensate her (including tax consequences) for all economic losses of any kind, and otherwise make her whole in accordance with the law.

 c. Back pay with interest.

 d. An equal amount as liquidated damages.

 e. An award of compensatory and punitive damages to be determined at trial.

 f. An award of attorney's fees and costs; and

 g. Any other relief the court deems just and proper.

Dated: January 17, 2023.

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS, LLP**

By: /s/ *Daniel Kalish*
**DANIEL KALISH, ESQ.**
Washington Bar No. 35815
E-mail: dkalish@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 826-5354
Fax: (206) 826-5354
Attorneys for Plaintiff